■ In the Matter of TONISHA J., Appellant, v PAUL P., Respondent. [866 NYS2d 26]—

Order, Family Court, New York County (Elizabeth Barnett, Ref.), entered on or about August 10, 2007, which, after a hearing, denied petitioner mother's petition for an award of permanent custody and granted respondent father's petition to modify the order of temporary custody and award him sole legal and

physical custody of the subject child with scheduled visitation to the mother, unanimously reversed, on the law and the facts, without costs, the father's petition denied and the mother's petition granted, and the matter remanded for further proceedings on the visitation schedule in the best interests of the child.

The decision of the Referee awarding custody to the father lacked a sound and substantial basis (see Matter of Krebsbach v Gallagher, 181 AD2d 363 [1992], lv denied 81 NY2d 701 [1992]). Although the Referee's statement that the child lived with both the father and mother for the first three or four years of his life implies that the parents virtually shared custody, it is clear that the mother had primarily raised and nurtured the child since his birth. While there is no dispute that the father properly cares for the child during his scheduled visitation and has an appropriate parent-child relationship with the boy, there is no evidence that he sought a more active role in the child's schooling or health care during his early years. Nor does it appear from the record that he provided the type of financial support for the child that would normally be expected. We recognize that the discord between the parties, which began when the father became involved with another woman and was exacerbated by the mother's ill-considered and misguided behavior toward the father and his fiancée thereafter, may lie at the heart of his conduct in relation to participating in the child's life and providing appropriate support. Nevertheless, he was not the child's primary custodial parent in the early years, and he limited his own participation and assistance.

The mother's past poor judgment and misconduct toward the father and his fiancée, particularly upon learning of the fiancée's pregnancy, appropriately evoked the court's concern. However, the record reflects that the mother has obtained effective assistance in learning how to avoid engaging in such misconduct in the future.

The evidence established that the child was well cared for, had a good relationship with his mother, and was happy. The mother had never caused the child harm, notwithstanding her accidentally burning his ears with a hair-straightening rod, and nothing else in her conduct as evaluated by the forensic social worker demonstrated that she lacked the ability to serve as custodial parent for the child.

Indeed, the evaluation by the forensic social worker, essentially adopted by the Referee, deemphasized the mother's accomplishments as custodial parent, while overemphasizing her flaws. For example, while it was certainly relevant, and unfortunate, that the child had missed many days of preschool,

no credit was given to petitioner for having found and enrolled the child in the program in the first place, and for the child's academic success in that program.

While both parties are fit parents, the mother served as primary custodial parent of the child for the approximately four years from his birth to this litigation, and the child was well cared for in all that time. Particularly in view of the mother's demonstrated acceptance and use of therapeutic assistance to improve her conduct in relation to the father and his fiancée, we are convinced that at this time the best interests of the child demand that she remain the custodial parent, with appropriate visitation to the father. Concur—Saxe, J.P., Catterson, McGuire, Acosta and DeGrasse, JJ.